IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHLEEN BLEICHNER,
as Special Administrator for the
estate of Michael Bleichner,

                                                    OPINION and ORDER

                    Plaintiff,

                                                    08-cv-057-bbc

          v.

SPIES PAINTING & DECORATING, INC.
and RONALD SPIES,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          Plaintiff Kathleen Bleichner is suing defendants Spies Painting & Decorating, Inc. and

Ronald Spies on behalf of her deceased husband, Michael Bleichner, under the Fair Labor

Standards Act, 29 U.S.C. §§ 201-219, on the ground that defendants failed to pay him for

all the work he did for them.  Now before the court is plaintiff's motion for partial summary

judgment on the issues of defendants' liability, certain affirmative defenses and certain issues

related to the calculation of damages.

          I will grant plaintiff's partial motion for summary judgment in large part.  Although

I cannot conclude as a matter of law that defendants violated the FLSA, I conclude that

certain activities that Bleichner performed are compensable work under the FLSA, leaving

it to the jury to decide the number of unpaid compensable hours Bleichner worked so that it will be possible to determine whether defendants' failure to pay Bleichner for these activities violated the FLSA minimum wage or overtime statutes. In addition, I conclude that defendants have failed to adduce evidence that they could prevail on any of the affirmative defenses plaintiff challenges; therefore, with one exception, I will grant plaintiff's motion for summary judgment as to defendants' affirmative defenses. The one exception relates to defendants' "good faith" defense to liquidated damages. I will deny plaintiff's motion as to that defense because the issue is not ripe and there are facts in dispute that are relevant to the question whether defendants' response was objectively reasonable and therefore in "good faith."

As an initial matter, I note that defendants failed to follow the procedures set forth for proposing and responding to proposed findings of fact. <u>Procedure to be Followed on Motions for Summary Judgment</u>, attached to Preliminary Pretrial Conference Order, dkt #13. Their mistakes ranged from failing to properly cite the record, <u>id.</u> at II.A.3 and I.C.1.e, to failing to describe the dispute, <u>id.</u> at II.D.2. Many of these errors are harmless because defendants managed to put certain facts in dispute indirectly by submitting their own proposed findings of fact in accordance with the court's procedures. However, where defendants have failed to properly propose their own on a matter, that fact has been disregarded; where defendants have failed to properly dispute one of plaintiff's facts, I have

2

taken that fact as proved.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Spies Painting Company

Defendant Spies Painting & Decorating, Inc. is a Wisconsin corporation with a principal office address of N8003 Highway 151, Fond du Lac, Wisconsin. It does business throughout Wisconsin. Between 2005 and 2008, Spies Painting has employed between 30 and 45 people, with 15 to 25 of them doing work in industrial and commercial painting.

Defendant Ronald Spies is the president of defendant Spies Painting in charge of the overall operations of the company. He has held that position since 1979. In addition, he and his wife Barbara Spies are the sole stockholders in defendant Spies Painting. As president, defendant Ronald Spies is usually the person who makes personnel decisions, sets the pay rate for employees when they start and decides in consultation with the other managers what each employee's raises will be.

Out of the 30 to 45 employees of defendant Spies Painting during 2005 and 2008, seven were supervisors in charge of providing an estimate on jobs, overseeing those jobs and managing the crews working on those jobs. Defendant Ronald Spies has also been in charge

3

of some Spies Painting jobs and crews since 2005 but he has done this less often in the last two years; in 2005 he was in charge of approximately 10% of the jobs.

### B.  Spies Painting's Efforts to Follow Labor Laws

For the most part, defendants depend on "common sense" to make sure they know what the laws are that they must follow relating to employees; neither Spies nor any other Spies Painting representative has attended an employment seminar since the early1990's. Spies was unable to identify any publication that defendants have referred to between January 1, 2001 and October 12, 2007 to become informed about the rules about compensation for employee travel under the Fair Labor Standards Act.

The last time Spies or anyone else acting on behalf of Spies Painting looked at publications about employment laws and the things employers can and cannot do was in about the year 2000.  Defendants have never seen any publications from the United States Department of Labor about labor or employment laws. The department has never sent Spies Painting anything, nor has Spies Painting ever requested anything from the department. Neither Spies or anyone else at Spies Painting has ever had any training about the Fair Labor Standards Act.

### C.  Bleichner's Work at Spies Painting

1.  Bleichner's general work activities

Michael Bleichner worked for Spies Painting several different times.  Most recently, he was employed by Spies Painting beginning in May 2004 and ending on October 12, 2007.  Bleichner worked for Spies Painting as a painter and sandblaster.  His primary job at Spies Painting was to prepare surfaces to be painted and to paint them.  This included brushing, rolling, spraying, preparation, wall coverings, floor installation and sandblasting.  Bleichner set up and ran job sites and ensured all the materials were on the job site as needed.

Bleichner was required to have tools, supplies and equipment available and properly functioning.  Spies Painting required Bleichner to have certain tools in his possession at all times to help him accomplish every day tasks on the job.  These tools included putty knives, scrapers, a hammer, pliers, wrenches, a duster, a chalk line, and a wire brush.


2.  Bleichner's activities before reaching job site

Usually, Bleichner drove a company van to the job site.  He was not responsible for bringing equipment and supplies to the job site; generally, the materials were at the job site before Bleichner started the first day.  On occasion, however, Bleichner loaded the company vehicle in the morning with materials other than his personal tools, such as paint, sprayers,

5

sand, sandblasters and other equipment to transport the supplies to the job site.  (The parties dispute how often Bleichner loaded the company vehicle.  According to defendants, Bleichner "generally" would not participate in loading the vehicles with anything more than his personal tools; while plaintiff alleges that Bleichner loaded the vehicle with other supplies "regularly.")  In addition, Bleichner would regularly speak with the supervisor of the day's job before leaving the shop.

In addition, at least sometimes Bleichner would drive the vehicle to the job site; at times, he carried other employees as passengers.  At least some of the painters who received a ride in the company vehicle could not legally drive or did not have a vehicle and relied on the ride to get to the job site.  (The parties dispute how often Bleichner drove the company vehicle and whether such activities were "required."  Defendants proposed as fact that Bleichner was never "required" to drive the Spies-owned vehicle to the job site, that Bleichner "generally" would not drive the vehicle and that the painters decided who would drive among themselves, while plaintiff proposed as fact that Bleichner was ordered to drive the vehicle by his supervisors and drove the vehicle frequently.)

Painters other than Bleichner understood that they were free to take the Spies vehicle to the job site at their discretion and agreed that they would not be paid travel time.  (Defendants submit evidence that three other painters agreed to that arrangement and evidence that Bleichner signed a form acknowledging that "he may ride in" the company

6

vehicle if it goes to the job site.  None of these facts establish that Bleichner ever agreed not to be paid for use of the vehicle or to any other terms regarding the use of the vehicle.)

From 2005 through 2007, defendants were aware that, at least sometimes, some of a job's crew members met at the shop before traveling in the company vehicle to get to the job site and placed items into the vans before leaving the shop.  Sometimes employees were paid for their time spent loading tools and supplies into the company vehicle in the morning before traveling to the job site, and then for their time traveling to the job site, but only if there was "a lot to load."  Spies Painting supervisors were at the shop every day between 4:30 and 5:00 in the morning before employees would arrive to load the company vehicle and drive it to the job site.

### 3.  Bleichner's activities after leaving job site

Most of the time, employees who traveled to the job site from the company shop in the company vehicle also traveled back to the shop at the end of the workday in the company vehicle.  When the company vehicle came back to the shop from the job site, it sometimes carried equipment or supplies back to the shop.  As a general rule, the company vehicles must come back to the company shop at night.  At least on occasion, Bleichner unloaded supplies or equipment from the company vehicle when he arrived at the company shop at the end of the day.  (The parties dispute how often this occurred.  According to

defendants, there was "generally" nothing to unload from the vehicle other than the painters' personal tools, and when there was, the unloading was "generally" done by supervisors instead of the painters.)

Spies Painting supervisors remain in touch with what is happening daily on the job sites by receiving feedback from employees who report the day's progress to the supervisor. On occasion, Bleichner would speak with supervisors after returning from the job site to report the crew's progress on a particular job.  Defendant Spies Painting was aware that at least sometimes employees came back to the shop at the end of the day and spoke with supervisors about what had happened on the job that day, but pursuant to its policy, it did not pay Bleichner for this activity.  (Defendants deny that painters, including Bleichner, were ever "required" to report to the supervisors at the shop before or after the workday as the "crew leader" on a job.  According to defendants, there was no such thing as a "crew leader" and conversations at the shop after painters returned from a job site "generally" did not occur, and when they did, they were "generally" social in nature.  Defendants do not deny that at least sometimes Bleichner did have work-related conversations with supervisors upon returning to the shop.)

### D.  Bleichner's Pay

Between January 24, 2005 and October 12, 2007, Bleichner was usually paid for the

work he performed starting at 7 a.m., which was when he would usually arrive at a job site. Bleichner completed a daily time card, filling in the time for the day at the end of the day after subtracting a half-hour for lunch.  Defendant Spies Painting generally did not pay Bleichner for the time he spent traveling to the job site from the shop or back to the shop from the last job site.

During the relevant time period, Bleichner worked the vast majority of time at remote job sites, not at the company shop.  Remote job sites were in numerous locations anywhere from 25 miles to 70 miles away from the shop.

The general rule at Spies Painting was for employees to put on their time cards only the times they were at the job site.  They were told not to put travel time on their time cards; occasionally, a client paid for the painters' travel time, in which case employees were instructed to put travel time down.  As of October 15, 2005, defendant Spies Painting had formally communicated to its employees that employees who turned in timecards without the "correct" times on them would not be paid for that time.  Defendant Spies Painting regularly relied on employee reports on their time cards as to what jobs they worked on each day.  Spies Painting paid employees on the basis of what was on their time cards.

Bleichner would not get paid for times he worked not entered on his time card.  He was not paid for driving the company vehicle from the shop to the job site except when he was instructed to put travel time on his time sheet.

9

Defendants knew that if Spies Painting did not pay employees for work they did, it would be illegal.  When Bleichner spoke with one of the supervisors about his belief that he should be paid for time spent traveling to the job site, the supervisor told him that the company would not pay him for that.

Although defendants assert that they have a practice of paying employees $0.22 per mile, one way, for travel to job sites that are 40 miles from the company shop, defendant Spies Painting does not have a written policy on this practice and employees do not sign anything agreeing to it.  Bleichner was not paid mileage for travel during his last term of employment at Spies Painting.

OPINION

A. <u>Issues Conceded</u>

As an initial matter, plaintiff moved for summary judgment on several legal issues that defendants have conceded, either explicitly or by failing to respond to them in their opposition brief.  <u>Wojtas v. Capital Guardian Trust Co.</u>, 477 F.3d 924, 926 (7th Cir. 2007) (failure to oppose arguments raised on motion for summary judgment constitutes waiver). Defendants have conceded that (1) Bleichner was a non-exempt "employee" under the FLSA; (2) defendant Ronald Spies is an "employer" as defined under the FLSA who may be held jointly and severally liable in the event defendant Spies Painting is found to be liable for

10

Bleichner's unpaid wages; (3) defendants' actions fail to establish that they acted in "conformity and reliance" on written statements from the Department of Labor under 29 U.S.C. § 259; (4) the three-year statute of limitations applies under 29 U.S.C. § 255(a) instead of the standard two-year statute.  Therefore, I will grant plaintiff's motion for summary judgment as to these matters.

## B. FLSA Liability

As explained in Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860, 862 (W.D. Wis. 2007), the gist of the Fair Labor Standards Act is to require employers to pay their employees a wage for all of the "work" that they do.  This simple rule arises naturally from the dual statutory requirements that employers (1) pay minimum wages, 29 U.S.C. § 206; and (2) pay overtime rates for hours worked in excess of 40 hours a week, 29 U.S.C. § 207. In its motion for summary judgment, plaintiff asks the court to conclude that Bleichner engaged in compensable "work" for which he was not paid.

## 1.  Bleichner's activities as "work" under FLSA

Although the FLSA does not define "work," the term has been defined broadly by the Supreme Court.  In Tennessee Coal, Iron & Rail Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944), the Supreme Court defined "work" as "physical or mental exertion

(whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  However, "[w]hether time is spent predominantly for the employer's benefit or for the employee's" is more important than the actual amount of "physical or mental exertion" involved in the activity.  <u>Armour & Co. v. Wantock</u>,  323 U.S. 126, 133-34 (1944).  Even activity that would generally be considered "nonproductive" may be considered work when it is performed for the employer's sake.  <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 691(1946) (nonproductive activity performed "under the complete control of the employer" considered work); <u>Tennessee Coal, Iron & Rail Co.</u> , 321 U.S. at 599, (traveling on a railcar through a mine shaft considered work); <u>Armour & Co.</u>, 323 U.S. at 133-34 (standing and waiting considered work).

Plaintiff identifies several activities of Bleichner's that she contends are unpaid "work" under the FLSA:  (1) loading the company vehicle with materials necessary for the job in the morning; (2) driving other employees to the first job site and back to the shop after the last job site; (3) unloading materials at the shop; and (4) discussing the progress of pending jobs with a supervisor at the beginning and end of the day.  Defendants do not disagree, except with regard to one of the activities, driving back and forth from the shop.  As to that activity, they suggest that it is not "work" because the employees' use of the company vehicle was primarily for their own benefit, not the employer's.  However, the facts show otherwise.

Defendants do not deny that some of their employees did not have a license or a vehicle and relied on the company vehicle to reach the workplace. Although the employees' use of the vehicle may have been a benefit to them, it was primarily defendants who benefited from the arrangement by making job sites accessible to more of the employees and allowing at least the occasional transport of work materials with its employees. Therefore, as with the other activities, Bleichner's use of the company vehicle to transport other employees to and from the job sites is properly considered "work" under the FLSA.

2. Exceptions to FLSA's general rule

Although the activities plaintiff identifies are "work," it does not necessarily follow that they are compensable. The general rule requiring employers to pay a wage for all work performed has exceptions, two of which are relevant in this case. Work may not be compensable under the FLSA if it (1) is "preliminary to or postliminary to" the employee's "principal" activities and occurs "prior to" or "subsequent to" the employee's "workday," 29 U.S.C. § 254(a)(2); or (2) is "de minimis."

a. Preliminary and postliminary activities

Under the Portal-to-Portal Act, "walking, riding, or traveling" to a place to perform a "principal activity or activities" or engaging in other activities considered "preliminary to

13

or postliminary to [a] principal activity or activities" is not compensable under the FLSA if they "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a).  In other words, preliminary and postliminary activities are not compensable under the FLSA if they are performed before the employee first starts engaging in "principal activities" or after the employee stops engaging in "principal activities" for the day.  However, any activities performed *within* this "workday" do not fall within this category.  IBP, 546 U.S. at 37 (walking compensable when performed after commencing "principal activity"); see also 29 C.F.R. § 790.5 ("Workday" includes all time within period between commencement and completion of employee's principal activities, regardless whether employee engages in work throughout entire period.)

It is undisputed that Bleichner generally was not paid for activities he performed before arriving at the first job site of the day or activities he performed after leaving his last job site.  In opposition to plaintiff's motion for summary judgment, however, defendants argue that these activities are not "compensable" under the Portal-to-Portal Act because they occurred either before Bleichner started his "workday" or after he completed it.

Plaintiff contends that Bleichner performed "principal activities" every time he performed any of the activities she has identified as unpaid "work."  Defendants challenge only one of the activities as not compensable under the Portal-to-Portal Act:  Bleichner's

14

driving the other employees to and from job sites.  Defendants cite the U.S. Department of Labor's <u>Field Operations Handbook</u>, 31C02, insert #1608, which states that "[d]riving time is not considered 'hours worked' in instances where an employee elects to transport other employees to and from work and [drives] the employer's vehicle for his/her own convenience."  According to defendants, plaintiff's driving the other employees to job sites should not be considered "hours worked" because Bleichner was allowed to "elect" to transport other employees.

However, as plaintiff points out, defendants' reliance on the <u>Field Operations Handbook</u> entry from 1981 is misplaced.  Any guidance it may have provided should be disregarded in light of the fact that the Portal-to-Portal Act was amended years later to clarify the scope of the Act as it relates to the use of an employer-provided vehicle for travel. Under the current law, use of the employer's vehicle and activities incidental to that use are exempted only if "the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee."  29 U.S.C. § 254(a)(2).  Defendants have failed to adduce evidence that Bleichner's use of the vehicle was "subject to an agreement."  Therefore this provision of the Portal-to-Portal Act does not apply.

As for the other activities plaintiff identifies, defendants do not deny that these

activities are "principal activities" under the Portal-to-Portal Act; at any rate, federal regulations support plaintiff's position. 29 C.F.R. § 785.38 (travel to and from meeting place where employee is required to report or pick up and carry tools considered "part of the day's work"). Instead, defendants simply argue that there are factual disputes regarding whether Bleichner engaged in any of the activities identified. I agree that the parties dispute the facts, but their disputes do not stand in the way of summary judgment. According to plaintiff, Bleichner performed each of those activities regularly; according to defendants, he "generally" did not do any of those things. Defendants' characterization of the events is consistent with a view that *at least sometimes* Bleichner did perform each of those activities.

In sum, defendants have failed to establish that the activities plaintiff identifies as unpaid "work" are barred by the Portal-to-Portal Act, as was their burden. Walling v. General Industries Co., 330 U.S. 545, 547-48 (1947) (defendants have burden to prove that exception to general FLSA rules applies). Therefore, I will grant plaintiff's motion for summary judgment on defendant's defense that the activities plaintiff has identified as "work" are not compensable under the Portal-to-Portal Act.

b. *De mimimus* exception

Plaintiff has moved for summary judgment on defendants' *de minimus* defense, arguing that the *de minimus* rule could not apply to Bleichner's circumstances for two reasons:

16

Bleichner's compensable time left unpaid was substantial and because, even if it were "only a few minutes," providing compensation for that time would have imposed no additional burden on defendants, citing 29 C.F.R. § 785.47 and <u>Spoerle</u>, 527 F. Supp. 2d at 869. Defendants do not develop their *de minimus* defense in their opposition brief, but simply argue that their version of the facts suggests that Bleichner did not do as much work as he said he did. Because defendants do not respond to plaintiff's arguments or even attempt to explain why the *de minimus* defense would apply in this case, I conclude they have conceded the issue and will grant plaintiff's motion for summary judgment on the matter.

3. <u>Remaining issues related to liability</u>

Not all issues related to liability have been resolved. Although I have concluded that Bleichner performed unpaid compensable work, the statutes require only that an employer pay "minimum wage" and "overtime." 29 U.S.C. §§ 206 and 207. Thus, defendants are liable only if the unpaid compensable work that plaintiff identified caused Bleichner to receive less than minimum wage for his work performed or receive less than time-and-a-half for any overtime worked. Because plaintiff has not established the number of hours Bleichner performed the activities that I have concluded are compensable work, a jury must determine that issue before defendants' liability under the FLSA can be determined.

17

C. Issues Related to Burden at Trial and Question of Damages

Plaintiff seeks summary judgment on two other issues related to the issue of her burden at trial and the scope of damages available to her.  First, plaintiff contends that defendants failed to keep accurate time records as required under 29 U.S.C. § 211(c) because it generally prohibited employees from including any time on their time cards for work performed before arriving at the first job site or after leaving the last one.  An employer's failure to keep proper and accurate records lowers plaintiff's burden of proving specific damages.  Brown v. Family Dollar Stores, 534 F.3d 593, 595 (7th Cir. 2008) (citing Anderson, 328 U.S. at 686-88).  In such a case, plaintiff need only "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id. (internal quotations omitted).

Defendants' argument in response is contingent on a finding that the activities at issue do not "constitute work":  if Bleichner was not working, there would be no records to keep.  Dkt. #24, at 10.  As I explained above, the undisputed facts establish that at least sometimes Bleichner was working for times not entered on his time sheets.  Therefore, I will grant plaintiff's motion for summary judgment on this matter as well.

Finally, plaintiff seeks summary judgment on defendants' "good faith" defense, which relates to the possibility that it could pay liquidated damages under 29 U.S.C. § 260.  As defendants point out, however, the issue of liability has yet to be decided and many issues

18

remain in dispute, making it particularly difficult to determine whether defendants' position

was "objectively reasonable."  <u>Walton v. United Consumers Club, Inc.</u>, 786 F.2d 303, 312

(7th Cir. 1986) (proper standard involves asking whether employer had objectively

reasonable grounds for act or omission).  Because a decision regarding "good faith" is not yet

ripe, I will deny plaintiff's motion for summary judgment on this matter.


ORDER

IT IS ORDERED that

1.  Plaintiff Kathleen Bleichner's motion for partial summary judgment, dkt. #18, is

GRANTED in part.  I conclude as a matter of law that:

      a.  Michael Bleichner was a non-exempt "employee" under the Fair Labor

Standards Act;

      b.   defendants Ronald Spies and Spies Painting & Decorating, Inc. are

"employers" under FLSA;

      c.  Bleichner performed the following activities, each of which constituted

"work" under the FLSA:

            i.  loading the company vehicle with materials necessary for the job in

the morning;

            ii.  driving other employees to the first job site and back to the shop

19

after the last job site;

    iii.  unloading materials at the shop; and

    iv.  discussing the progress of pending jobs with his supervisor at the beginning and end of the day;

d.  defendants cannot prevail on the following defenses:

    i.  that the activities identified as work in 1.c are not compensable under the Portal-to-Portal Act;

    ii.  that any violation arising from those activities is *de minimus*;

    iii.  that defendants acted in "conformity and reliance" on written statements from the Department of Labor under 29 U.S.C. § 259;

e.  defendants failed to keep accurate time records as required under 29 U.S.C. § 211(c);

f.  the three-year statute of limitations described in 29 U.S.C. § 255(a) applies to plaintiff's claims;

2.  Plaintiff's motion for summary judgment is DENIED as to defendants' "good

faith" defense.

Entered this 3rd day of February, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge